# UNITED STATES DISTRICT COURT

for the

~~EASTERN~~ District of NEW YORK ★

CIVIL Division

**BROOKLYN OFFICE**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 18 2026 ★

Case No. 25-CV-74(NRM)(CLP)

*(to be filled in by the Clerk's Office)*

ETTORE MAZZEI

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

DETECTIVE ARTHUR TRUSCELLI,
ET AL

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

Jury Trial: *(check one)* ☒ Yes ☐ No

RECEIVED
FEB 18 2026
PRO SE OFFICE

AMENDED
## COMPLAINT FOR A CIVIL CASE

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name ................................ ETTORE MAZZEI
Street Address ................... 11-11 HAZEN STREET
City and County .................. E. ELMHURST, NY 11370
State and Zip Code
Telephone Number
E-mail Address

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

REC'D IN PRO SE OFFICE
FEB 20 '26 AM 10:56

Defendant No. 1

Name ARTHUR truscelli

Job or Title *(if known)* DETECTIVE SHEILD 691

Street Address 70 RICHMOND TERR.

City and County SI , RICHMOND (RC)

State and Zip Code NY 10301

Telephone Number

E-mail Address *(if known)*

DEF. NO. 5

OFFICER ACIERNO

70 RICHMOND TERR.

SI , RC

NY 10301

Defendant No. 2

Name BRENDAN O'BRIEN

Job or Title *(if known)* DETECTIVE NBSI

Street Address 70 RICHMOND TERR

City and County SI , RC

State and Zip Code NY 10301

Telephone Number

E-mail Address *(if known)*

tHomas CARUSO

DETECTIVE

70 RICHMOND TERR

SI , RC

NY 10301

Defendant No. 3

Name DEt. WILKINSON

Job or Title *(if known)* WARRANT SQUAD

Street Address 70 RICHMOND TERR

City and County SI , RC

State and Zip Code NY 10301

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name DETECTIVE+OFFICERS
JANE + JOHN DOE

Job or Title *(if known)*

Street Address 70 RICHMOND TERRACE

City and County SI , RC

State and Zip Code NY 10301

Telephone Number

E-mail Address *(if known)*

## II.  Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.  If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 VSC 1983, 1985 , 1986 , 1987 + 18 VSC : 241, 242, 4 VS Constitution including 1, 4, 5, 6, 8, 9 ,10, 14 + MS statutes AND MS constitution

### B.  If the Basis for Jurisdiction Is Diversity of Citizenship

1.  The Plaintiff(s)

    a.  If the plaintiff is an individual
        The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

    b.  If the plaintiff is a corporation
        The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,
        and has its principal place of business in the State of *(name)* _____

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.  The Defendant(s)

    a.  If the defendant is an individual
        The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of
        *(foreign nation)* _____

b.  If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____

Or is incorporated under the laws of *(foreign nation)* _____

and has its principal place of business in *(name)* _____

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

plaintiff, Ettore Mazzei (EM herein) request to this court to exercise supplemental jurisdiction over state claims. All defendants were directly and personally involved in all allegations and deprivation of constitutional rights (SEE ATTACHED) pages 4A thru U

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Damages include deprivation of my tUS constitutional rights, emotional distress, mental anguish, trauma and other emotional and psychological injuries. (SEE ATTACHED)

RELIEF [IV] CONTINUED: ACTUAL DAMAGES IN CLAIM 2(A) WHICH ARE CUMALATIVE DAMAGES IN ALL CLAIMS ARE ALLEGED TO BE APPROXIMATELY $200,000. TO $250,000 (TWO HUNDRED AND FIFTY THOUSAND) PER VIOLATION PLUS PUNITIVE, SPECIAL, TREBLE AND/OR EXEMPLARY DAMAGES TOTALING $8 MILLION.

EM ALSO REQUESTS DEFENDANTS BE PROSECUTED UNDER STATE AND FEDERAL LAW FOR DEPRIVATION OF RIGHTS UNDER COLOR OF LAW AND NY CLS PUBLIC OFFICER LAW AND USC CHAPTER 227: SENTENCES; SUBCHAPTER C:, FINES AND OTHER RELATED STATE AND FEDERAL REMEDIES.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 2/_/2026

Signature of Plaintiff

Printed Name of Plaintiff     ETTORE MAZZEI

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney     MICHAEL FUTRAL

Bar Number

Name of Law Firm     THE CITY OF NY CORPORATION COUNSEL

Street Address     1 CENTRE STREET

State and Zip Code     NY , NY 10007

Telephone Number

E-mail Address

BACKGROUND: EM WAS ARRESTED, ARRAIGNED AND INCARCERATED ON 5/22/24. AS PER ORDER DATED 12/22/25 HE UPDATES THE COURT TO THE STATUS OF HIS CRIMINAL PROSECUTION. IND. NO. 70407-24 WAS SETTLED ON 9/30/25 AND EM PLEADES GUILTY TO ASSAULT[3]: A MISDEMEANOR. IND. NO 70363-24 CSCS TRIAL IS PLANNED FOR FALL 2026. THEREAFTER, TRIAL FOR 70623-24 AND CONSOLIDATED INDS. 70362-24 AND 70406-24.

PRELIMINARY STATEMENT: EM IS AWARE AND STATES IN HIS INITIAL FILING OCT 2024, THAT HE CANNOT CHALLENGE AN ALLEGED UNCONSTITUTIONAL CRIMINAL PROSECUTION AND CLEARLY DOES NOT ATTACK HIS CRIMINAL CONVICTION. DEFENDANTS LAWLESSNESS IN THIS CLAIM WOULD NOT RENDER EM SENTENCE INVALID, HENCE HE REQUESTS THESE PROCEEDINGS CONTINUE AFTER 3/24/26 STAY. HE WILL KEEP THE COURT UPDATED ON CHANGES IN HIS CRIMINAL PROCEEDINGS. EM CAREFULLY DRAFTED THESE COMPLAINTS ALLEGING VIOLATIONS OF STATE AND FEDERAL STATUTES AND CONSTITUTIONAL VIOLATIONS THAT WILL PREVAIL REGARDLESS OF HIS CONVICTION OR EXONERATION.

4A

PRELIMINARY STATEMENT continued

EM contends and has contended RCDA has nullified their absolute immunity due to various factors including many "in Exhibit # 1 "motion for special prosecutor and requests to this court adding RCDA, MYS, MYC and MPD after this criminal proceedings have concluded - conspiracies alleged in complaint against MYP, MYS, RCDA, MYC does not allege criminal conviction including (A) Vacating legally zoned dormitory (B) RCDA conspiring with detectives denying EM counsel @Sensationalizing and making inflammatory statements at EM arraignment blurring facts and causing excessive bail. EM alleges lies and false-hoods in warrant affidavit effecting this arrest and over a dozen "no knock" warrants was directly responsible for excessive bail and sealed indictments and vacatur of legal dormitory. EM filed article 78 against NYC requesting reversal of fines and vacate order index # 100254/2025.
4B

CLAIM 1: EM WAS ARRESTED AT APPROXIMATELY AT 3:30 AM ON MAY 22, 2024 ON TARGEE STREET OFF VANDERBILT AVENUE. THE ARRESTING OFFICERS DID NOT PRESENT EM WITH A WARRANT FOR HIS ARREST OR TELL HIM WHY HE WAS BEING ARRESTED. EM WAS NOT INFORMED OF THE NATURE AND CAUSE OF THE ACCUSATIONS AGAINST HIM.

CLAIM 2: ON 9/17/2024 DEFENDANT police OFFICERS AND DETECTIVES WILKINSON, JONCELLI, O'BRIEN, D'AMATO AND 4 OTHER JANE AND JOHN DOE MOCKED AND THREATENED HIM WHEN HE REFUSED TO BE FINGERPRINTED WITHOUT HIS ATTORNEY MARK FONTE ESQ PRESENT IN CONNECTION WITH IND. 70623-24. DETECTIVES AND OFFICERS DENIED EM HIS REQUEST TO SPEAK TO HIS ATTORNEY. AFTER PRESENT OFFICER AND DETECTIVES CALLED RDA AND WHILE ON THE PHONE WITH RDA STATED "DISTRICT ATTORNEY SAID ATTORNEY DOES NOT NEED TO BE PRESENT TO GET FINGERPRINTED." US AND HIS CONSTITUTIONAL RIGHT VIOLATIONS, STATE AND FEDERAL LAW VIOLATIONS INCLUDING (A) VIOLATION

OF OATH OF OFFICE, ARMED ABUSE OF OFFICE, ARMED ABUSE OF AUTHORITY, ARMED THREAT OF VIOLENCE, ARMED COERCION, DENIED PROPER WARRANTS, ARMED VIOLATION OF DUE PROCESS, DENIED PROVISIONS IN THE CONSTITUTION, ARMED DEPRIVATION OF RIGHTS UNDER COLOR OF LAW, EMOTIONAL DISTRESS, MENTAL ANGUISH ABUSE, DEFAMATION OF CHARACTER, SLANDER, ARMED CONSPIRACY AGAINST RIGHTS OF EM, ARMED FRAUD, ARMED PERJURY AS PER 18 USC: 241, 242, 4 AND OTHER FEDERAL AND STATE LAWS AND MY S AND US CONSTITUTIONAL RIGHTS.

CLAIM 3 AND 4: ON 5/22/24 . Approximately 8³⁰ AM THE PO PRECINCT, DETECTIVE TRUSCELLI THREATENED VIOLENCE AND COERCION ON THE WAY TO SUPREME COURT FOR ARRAIGNMENT. HE SCREAMED "WHERE ARE THE DRUGS" EM REPLIED "THERE ARE NONE" TRUSCELLI REPLIED "IF YOU DON'T TELL ME WHERE THE DRUGS ARE, I WILL DESTROY YOU, YOUR

4/D

Claim 5: ASSETS SEIZED BEFORE CONVICTION
AND NOT RETURNED AFTER EM REQUESTED.
EM CHALLENGES the CONSTITUTIONALITY OF WHY
DETECTIVE AND POLICE WOULD RETURN the HOME
AND BUSINESSES to HIM AFTER RAIDS AND
REFUSE to RETURN OTHER SEIZED ITEMS
INCLUDING the GIRLFRIEND REBECCA SEIZED
HEIRLOOM JEWELRY, CONTENTS OF HER SAFETY
DEPOSIT BOX FROM CHASE BANK ON BAY STREET,
the PHONE, COMPUTER AND DOCUMENTS NEEDED
FOR the DEFENSE. MANY OTHER ASSETS WERE
SEIZED TO BE DISCOVERED - the 1992 INFINITI,
W30 CLASSIC CAR HAS ALSO NOT BEEN RETURNED.

I KNOW WHERE YOUR HOME IS IN the CATSKILL
MOUNTAIN. Marcelli, DID NOT READ EM the
MIRANDA RIGHTS. Exact words may differ
SLIGHTLY

All
Businesses, Family AND R.I.P. about your properties,

CLAIM 6: INCLUDED IN EM DEPRIVATION OF PROPERTY IS H's 3RD FLOOR DORMITORY AT 691 BAY STREET SI, NY 10304. EM HAS SUBMITTED TO THIS COURT THE CERTIFICATE OF OCCUPANCY FROM 5/15/58 INDICATING 691 BAY STREET 3RD FLOOR IS ZONED MEN'S DORMITORY AND LEGAL. NYPD, RCDA AND NYC DEPART OF BUILDINGS VACATED ALL TENANTS, DESTROYED THE DORMITORY, BREAKING ALL DOORS, LEFT DORMITORY OPEN AFTER COMPLETION. ALL PROPERTY IS NOW GONE.

CLAIM 7: DETECTIVE TRUSCELLI LIES IN WARRANT AFFIDAVIT EFFECTING EM ARREST, ARRAIGNMENT AND INCARCERATION, ALONG WITH EXTREMELY INFLAMMATORY STATEMENTS ABOUT EM AT ARRAIGN- MENT AND IN (2) RCDA PRESS RELEASES (PR) ARE DIRECTLY RESPONSIBLE FOR CLAIMS 7, 8, 9 EM CLAIMS WARRANTS ISSUED FOR H's ARREST, "NO KNOCK WARRANTS" AND WIRETAPS WERE BASED ON LIES, SUGGESTIONS AND OPINIONS.

4 F

CLAIM 8 : EXCESSIVE BAIL : EM CODEFENDANT GP IS ACCUSED OF SELLING NARCOTICS TO AN UNDERCOVER COP (VC210) 15 X. AS PER GRAND (GJ) JURY MINUTES, TOTAL GROSS SALES WERE BETWEEN $16 K TO $18K (EIGHTEEN THOUSAND) OVER 14 MONTHS AN AVERAGE OF $43 PER DAY DIVIDED BY 5 CODEFENDANTS EQUALS $8 60 PER DAY. IN IND. 70363-24 AND GJ MINUTES THERE IS ONE CUSTOMER, VC210. RDA ASK FOR EM TO BE REMANDED. EM ATTORNEY MARK FONTE ESQ CONTESTED. JUDGE SET BAIL AT $5 MILLION. ON 9/13/24 HIS BAIL FOR IND 70623-24 WAS SET AT $1 MILLION. IN 70623, EM CODEFENDANTS WERE ACCUSED OF POSSESSING STOLEN CHECKS AND CREDIT CARDS AND PAID EM BILLS AND BOOKED CATERING EVENTS THROUGH HIS COMPANY CHEZ VOUS CATERERS. CASE LAW DETERMINES KINGPIN BAIL WHO SELL MORE THAN $75,000 OF YEAR IN NARCOTIC GET BAIL BETWEEN $250K AND $750K (SEVEN HUNDRED AND FIFTY THOUSAND) EM WAS NEVER CAUGHT POSSESSING. NARCOTICS OR STOLEN CHECKS DURING 14 MONTH INVESTIGATION WITH 127 DETECTIVES AND NO STOLEN CHECKS OR NARCOTICS FOUND DURING RAIDS AT HIS HOME AND BUSINESSES

46

CLAIM 9: EM ALLEGES DEFENDANTS DIRECTLY AND INTENTIONALLY PARTICIPATES IN NEGLECTFUL OR WRONGFUL PERFORMANCE OF AN OFFICIAL DUTY, AND CLERICAL ERROR IN A LEGAL PROCEEDING. FIVE SEALED INDICTMENTS VIOLATES EM NYS AND US CONSTITUTIONAL RIGHTS.

CONCLUSION: EM RESERVES RIGHT TO AMEND THIS COMPLAINT AFTER HIS CRIMINAL PROCEEDING CONCLUDE, ADDING OFFICIAL MUNICIPAL POLICY CAUSED THE DEPRIVATION OF HIS CONSTITUTIONAL RIGHTS AND FEDERAL AND STATE LAW. IN ACCORDANCE WITH VALENTINA V DINKINS 121 F 3d 72 (2d CIR. 1997)(PER CURIAM) EM REQUESTS THIS COURT ASK NYC CORPORATION COUNSEL TO ASCERTAIN THE NAMES OF DETECTIVE JANE AND JOHN DOE THAT ARRESTED HIM, SEIZED HIS PROPERTY AND THREATENED HIM ON 9/12/24. HE ALSO REQUESTS BODYCAM AND/OR VIDEO OF HIS ARREST ON 5/22/24, ASSETS SEIZED ON 5/22/24 AND THREATS FROM DETECTIVE TRUSCELLI ON 5/22/24 AT 120 PRECINCT, THREATS AND DENIAL OF COUNSEL ON 9/12/24 IN FINGERPRINT ROOM AT RC COURT 26 CENTRAL ADJACENT TO DETAINEE HOLDING CELLS.

4H

EM REQUESTS THESE PROCEEDINGS CONTINUE AFTER 3/24/26 STAY ENDS. TIME IS OF THE ESSENCE IN REGARDS TO IDENTIFICATION OF JANE AND JOHN DOE DEFENDANTS AND PRODUCTION OF BODY CAM AND/OR VIDEO.

RESPECTFULLY SUBMITTED

DATED: 2/7/26

ETTORE MAZZEI
11-11 HAZEN STREET
E. ELMHURST, NY 11370

Swore to before me this

7th day of February 2026

RUTH MARCANO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MA50___
Qualified in Nassau County
My Commission Expires December 01, 20__

SENT TO: NYC CORPORATION COUNSEL
MICHAEL FUTRAL ESQ
100 CHURCH STREET
NEW YORK, NY 10007
(212) 356-1643

4I

EXHIBIT #1

SUPREME COURT OF THE STATE OF NEW YORK
RICHMOND COUNTY: CRIMINAL TERM, PART 16

-------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,  :

        -against-          :      NOTICE OF
                                        MOTION FOR SPECIAL
                                        PROSECUTOR

ETTORE MAZZEI              :

                                · Ind. Nos.     70362/2024
                                :                     70363/2024
                 Defendant.                   70406/2024
-------------------------------------------------------------X      70623/2024

      PLEASE TAKE NOTICE that, upon the annexed affirmation of Mark J. Fonte, Esq.,
and upon the indictment and all prior proceedings, the undersigned will move this Court at
Part 16 at the courthouse located at 26 Central Avenue, Staten Island, New York, on October
22, 2025 at the opening of court on that day or as soon thereafter as counsel can be heard, for
an order:

1. Pursuant to County Law §701(1), disqualifying the Richmond County District
   Attorney's Office from prosecuting Mr. Mazzei, or, in the alternative, granting a
   hearing to determine whether the District Attorney's Office should be disqualified;

2. Pursuant to Count Law § 701(1), appointing a special prosecutor to investigate and
   prosecute this matter and;

3. Granting such other relief as this Court may deem proper.

Dated: October 12, 2025
      Staten Island, New York


Yours, etc.,   *Mark J. Fonte*

TO: HON. MICHAEL MCMAHON            Mark J. Fonte Esq.
District Attorney, Richmond County        Attorney for Defendant
                                        2550 Victory Boulevard
                                        Suite 304
                                        Staten Island, NY 10314
                                        (718) 420-4949


Clerk of the Supreme Court County of Richmond, Criminal Term

SUPREME COURT OF THE STATE OF NEW YORK
RICHMOND COUNTY: CRIMINAL TERM, PART 16

---------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, :

          -against-              :      AFFIRMATION & LEGAL
                                          ARGUMENT IN SUPPORT
                                          MOTION FOR SPECIAL
                                          PROSECUTOR

ETTORE MAZZEI                :

                                      :      Ind. Nos.    70362/2024

                                :                   70363/2024

                    Defendant.                   70406/2024

---------------------------------------------------------------X         70623/2024

        MARK J. FONTE, ESQ., an attorney admitted to practice law in the courts of this
State, hereby affirms under penalty of perjury that the following statements are true, except
for those made upon information and belief, which I believe to be true:

1.       I am the attorney of record for the defendant, Ettore Mazzei. I am familiar with the
facts of these cases and make this affirmation in support of defendant's motion. Unless
otherwise specified, all allegations of fact are based upon information and belief, the sources
of which include inspection of the record of the case, conversations with Assistant District
Attorneys, the defendant, and counsel's own investigations.

## RELEVANT BACKGROUND

2.       In the latest published edition of "'The Right Thing': A Ethics Guide For
Prosecutors," published by the District Attorney's Association of the State of New York for
2025, prosecutors are directed to "try your case in the Courtroom, not the Media." *See
Exhibit A*, p. 17.

3.       While referencing Rule 3.6 of the New York Rules of Professional Conduct, the
guide warns that prosecutors should "take special note of the limited breadth of the list of

permissible subjects that a prosecutor can talk about regarding a pending matter, and how deeply you may delve into each." *Id.* Further, prosecutors are also warned to be "beware of sharing what you personally think or believe, especially while a case is pending." *Id.* at p. 18.

4.      The president of the DAASNY at the time this guide was published, and the signer of an introductory preface to the guide, including a description of the guide as reflecting a "long-standing commitment to ethical prosecution and to the protection of the rights of victims, defendants and the public," was none other than Richmond County District Attorney Michael McMahon.

5.      Yet, the Richmond County District Attorney's Office does not seem to have consulted the organization's guide as to how to ethically deal with the media and trial publicity, particularly as it applies to pending matters. While the issuance of inflammatory press releases by the District Attorney as to pending matters is something of a hallmark of his tenure as District Attorney, in the instant matter, he and his office frankly go well beyond the ethical limits and thereby create a set of circumstances that allows for us to fairly call into question the impartiality of the office and demonstrate an overwhelming appearance of impropriety as applied to the prosecution of Ettore Mazzei.

6.      Of particular concern are two press releases, both of which contain quotes attributed to the District Attorney as well as other members of law enforcement. The first, dated, May 22, 2024, is attached as *Exhibit B*. The second, dated September 13, 2024, is attached as *Exhibit* C.

7.      Prior to addressing the specific statements that were made, it is important to note that Mr. Mazzei is not charged, in any of the instant indictments, with causing the death of anyone. This is not an attempt to mitigate the nature of the charges themselves, but to simply establish a better idea of what Mr. Mazzei is actually charged with as opposed to what the District Attorney would imply.

8.      The District Attorney, in the May 22, 2024 press release, states: "Losing over 150 of our neighbors and loved ones to a fatal overdoes just last year, Staten Islanders know all too well the devastating and deadly ramifications of the opioid and overdoes crisis. And yet, shameless poison purveyors like Ettore Mazzei and his associates continue to flood our streets with death-dealing and harmful narcotics, choosing to prioritize profit over the pain and suffering they leave in their wake." *Exhibit B*, p. 2.

9.      The release continues, "[l]ike a modern-day Fagin, the character from Dickens' *Great Expectations*,[1] Mazzei preyed on vulnerable people who suffered from addiction illness and oppressed them into servitude in his catering business, for housing and ultimately, for drug dealing…He is a successful businessman for sure – a crooked, evil businessman." *Id.*

10.     Of perhaps greater significance to the instant motion is the District Attorney's claim that "there will be no quarter nor leniency for those who prey upon our loved ones and knowingly sell this poison." *Id.* at 3. Again, this was a press release about a pending indictment, not a political stump speech, though the distinction has been blurred by this administration.

11.     In the later press release of September, the District Attorney resumes his personal attack on Mr. Mazzei, again implying charges that involve the causing of death, but here outright appeals to the public, making clear that "Mazzei's latest illicit affairs are not only flagrantly criminal but an affront and insult to the nearly 500,000 hardworking and law-abiding Staten Islanders who pay their bills and expenses honestly without resorting to embezzlement." *Exhibit C* at 2.

---

[1] The fact that Fagin is actually a character from *Olivier Twist* and not *Great Expectations* merely serves to highlight the carelessness and recklessness that goes into what information is released to the media by Mr. McMahon and his office.

12.     The press release further goes on to allege that "the 62 year old faux businessman refused to be fingerprinted, delaying his arraignment and the unsealing of his latest indictment until today." *Id.*

13.     The District Attorney, through these press releases, has revealed an utter lack of impartiality in carrying out his role and has, before any defense has even been put forth, seemingly barred his office from considering any arguments that do not fit into the narrative of events that he portrays to the media in over the top extrajudicial statements that are more in the vein of personal attacks than in actually relaying information to the public. At the time of his indictment, not conviction for any offense, the District Attorney was already making clear that the "one man crime wave is being put to a stop and justice will be secured for the countless victims this dangerous defendant left in his wake." *Id.*

14.     It would seem that the District Attorney was happy enough to release the DAASNY guide, but there is no indication of a willingness to heed its advice. It is essential to note that none of the above statements were made in court in response to arguments made by the defense or in support of any arguments made by the People. All of the statements referenced above are simply extrajudicial statements to the media. The statements did not need to be made.

15.     The attacks against Mr. Mazzei are extremely inflammatory, overly personal in nature, include irrelevant personal opinion, imply guilt for uncharged offenses and, together, create a clear appearance of impropriety that, for the reasons addressed below, present a basis for the disqualification of the Richmond County District Attorney in handling the instant prosecution.

16.     Consistent with the public commentary, the District Attorney has been unwilling to engage in any type of meaningful discussion towards the resolution of this case. That the District Attorney would recklessly engage in a public commitment that, implicitly, precludes even the possibility of innocence or consideration of any type of defense argument or mitigation, deprives Mr. Mazzei of the ability of being treated like other defendants

5

prosecuted by the District Attorney's office that are not made the subject of inflammatory press releases.

17.    Now, over a year and a half from the initial press release, Mr. Mazzei has not been made any plea offer. In my nearly forty years of experience in the handling of criminal matters, just slightly less than the Court's own experience, there have been few times, if any, where I have seen a District Attorney handle cases charging drug related and larceny related offenses in this draconian a fashion. These cases and the treatment in the press of Mr. Mazzei by the District Attorney nearly completes, at a local level, the full blown politicization of prosecution that has been the trend regionally and nationally over the past few years.

18.    When a prosecutor abdicates their esteemed role in the administration of justice in favor of scoring political points, it is submitted that this Court must act to disqualify the offending prosecutor and ensure that a defendant and his rights are fully protected.

## LEGAL ARGUMENT

*A.  The District Attorney's public commentary with respect to Mr. Mazzei is in violation of the New York Rules of Professional Responsibility*

19.    Relevant herein, Rule 3.6 of the New York Rules of Professional Conduct, reads as follows, with emphasis added:

> (a) A lawyer who is participating in or has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

> (b) A statement ordinarily is likely to prejudice materially an adjudicative proceeding when it refers to a civil matter triable to a jury, a criminal matter

6

or any other proceeding that could result in incarceration, and the statement relates to:

(1) **the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness,** or the identity of a witness or the expected testimony of a party or witness;

(2) in a criminal matter that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission or statement given by a defendant or suspect, or that person's refusal or failure to make a statement;

(3) the performance or results of any examination or test, or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

(4) **any opinion as to the guilt or innocence of a defendant or suspect in a criminal matter that could result in incarceration;**

(5) **information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial;** or

(6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

(c) Provided that the statement complies with paragraph (a), a lawyer may state the following without elaboration:

(1) the claim, offense or defense and, except when prohibited by law, the identity of the persons involved;

(2) information contained in a public record;

(3) that an investigation of a matter is in progress;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and information necessary thereto;

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7) in a criminal matter:

(i) the identity, age, residence, occupation and family status of the accused;

(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii) the identity of investigating and arresting officers or agencies and the length of the investigation; and

(iv) the fact, time and place of arrest, resistance, pursuit and use of weapons, and a description of physical evidence seized, other than as contained only in a confession, admission or statement.

(d) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

(e) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

20.     Rule 3.6 is by no means vague nor is it by no means brief. It is a complete explanation of all that is and is not permissible for a prosecutor, or any attorney for that matter, to state in public communication.

21.     It hardly requires a point by point analysis as the violation of Rule 3.6 is clear and apparent in both press releases. In both, the District Attorney goes well beyond the limits of what is supposedly permissible in any matter, let alone a criminal matter. The statements are nearly exclusively in the category of statements that the rule provides are "likely to prejudice materially an adjudicative proceeding" as set forth in subsection b of the rule.

22.     The District Attorney has an obligation to ensure that the defendant in this matter, Mr. Mazzei, receives a fair trial. While his personal beliefs as to Mr. Mazzei's existence as a legitimate or "faux" businessman, or whether Mr. Mazzei is evil, let alone implying that Mr. Mazzei has killed people and is an enemy of the people of Staten Island are thoughts that he very well may maintain, his injection of these beliefs into his role as a prosecutor crosses an ethical line and is in clear violation of the Rules of Professional Responsibility.

23.     The District Attorney has attacked nearly every facet of Mr. Mazzei's character and life, making allegations that will forever poison the minds of any Staten Islander who has read the press releases or the news articles that relied on the releases.

24.     Given that Mr. Mazzei has been not been convicted of any offense and is presumed innocent, a useful exercise to demonstrate the unethical and prejudicial nature of the District Attorney's conduct is to consider the possibility that all of the instant matters result in

dismissal or acquittal. The extrajudicial attack on Mr. Mazzei as a person cannot be undone by any potentially positive eventual outcome - an outcome that, until proven otherwise, Mr. Mazzei is constitutionally entitled to presume. This is why, fundamentally, the rules of ethical conduct exist in such contexts.

25.     Moreover, the same can be said for the District Attorney's reputation and credibility in the event of an acquittal. By making statements in the manner in which he did, the District Attorney put his own credibility on the line and thereby created a scenario that would necessarily prevent the District Attorney's Office of engaging in any type of meaningful case specific analysis as anything short of the most draconian punishment would make a liar out of him.

26.     The public deserves better from their chief law enforcement officer, insofar as merely maintaining restraint in public commentary, and, in this case, Mr. Mazzei is legally entitled to a fair and impartial prosecution.

### B. *The District Attorney's violation of the Rules of Professional Responsibility have both prejudiced Mr. Mazzei as well as created an appearance of impropriety*

27.     Under County Law §701, a superior court may appoint a Special Prosecutor when the District Attorney and his or her assistants are disqualified from acting in a particular case. In general, disqualification of the District Attorney and appointment of a Special Prosecutor must be based upon a showing of actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence. *See* County Law §701.

28.     The District Attorney is considered a quasi-judicial officer and is expected to act impartially and solely in the interest of justice. *People v. Baker*, 99 A.D.2d 656 (4th Dept. 1864). "He may prosecute with earnestness and vigor – indeed he should do so. But, while he may strike hard blows, he is not at liberty to take foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every

9

legitimate means to bring about a just one." *People v. Mott*, 94 A.D.2d 415, 418 (4th Dept. 1983) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1934)). "That responsibility is not a meaningless truism; it is a paramount value. It is embedded in our sense of due process and fair play." *People v. Payne*, 187 A.D.2d 245, 247 (4th Dept. 1993).

29.     The courts, as a general rule, should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence." *Schumer v Holtzman*, 60 NY2d 46, 55 (1983). The latter phrase refers to the "opportunity for abuse of confidences entrusted to [an] attorney." *People v Shinkle*, 51 NY2d 417, 420 (1980). In general, "[t]he objector should demonstrate actual prejudice or a substantial a risk thereof as could not be ignored." *Schumer*, 60 NY2d at 55 (1983).

30.     However, in some situations, the appearance of impropriety itself is a ground for disqualification. *See Shinkle*, 51 NY2d 417 (1980); *See also People v. Nuzzi*, 128 Misc. 2d 502 (S.Ct., N.Y. Cty, 1985). As our case law recognizes, when the appearance is such as to "discourage [] public confidence in our government and the system of law to which it is dedicated." *People v Zimmer*, 51 NY2d 390, 396 (1980). In a case of that nature, "[d]efendant[s], and indeed the public at large, are entitled to protection against the appearance of impropriety." *Shinkle*, 51 NY2d at 421.

31.     For the chief law enforcement officer in Richmond County to engage in unethical conduct with respect to the press releases his office issued in connection with the prosecution of Mr. Mazzei must shake and discourage public confidence in our government and suggest, very strongly, that Mr. Mazzei will not be prosecuted with any degree of impartiality.

32.     In *People v. Adams*, the Court of Appeals reversed a conviction and remitted for appointment of a special prosecutor a matter where a judge that presided over cases handled by the Monroe County District Attorney's Office was a complainant on a case being handled by said office. 20 N.Y.3d 608 (2013). Therein, given the judge's position that no plea offer should be made, which was expressed to the prosecutor, the defendant in the matter was tried

by a jury and convicted of an offense that, ordinarily, would have resulted in less harsh treatment.

33. The Court in *Adams* held: "Although no constitutional right to a plea bargain exists, an appearance of impropriety may arise when the record provides an objective basis to question whether the prosecutor is exercising pretrial prosecutorial discretion in an evenhanded manner, based on the merits of the case or other legitimate prosecutorial concerns." *Id.* at 613.

34. Perhaps more importantly, the Court continued, "[h]ere, while we do not find that any actual impropriety occurred, there is an unacceptably great appearance of impropriety—the appearance that the District Attorney's office refused to accept a reduced charge because the complainant was a sitting judge who demanded that the matter go to trial, rather than because a trial was, in its own disinterested judgment, appropriate." *Id.*

35. The appearance of impropriety here stems not from an overly influential complainant but from repeated ethical violations that would, absent a prosecution to the fullest extent that resulted in convictions across the board, leave the District Attorney potentially liable for defaming Mr. Mazzei, and at risk of punishment for his unethical conduct. That is discounting the need, politically, for the District Attorney to insist that the prosecution match the premature extrajudicial advocacy that was engaged in, no matter whether the facts, as they have developed over the past year and a half support them.

36. Much like the defendant in *Adams*, there's been no willingness to engage in plea negotiations. As noted, this is extraordinarily unusual and reflects a treatment that is not evenhanded.

37. Moreover, while the prior arguments focused merely upon the appearance of impropriety, there's no need to lose sight of the fact that the Rules of Professional

Responsibility make clear that the types of violations that the District Attorney engaged in are of the type that are likely to result in prejudice.

38. Thus, the requirements for the disqualification and appointment of a special prosecutor are met in this matter. By appointing a special prosecutor, Mr. Mazzei will be prosecuted by an office/individual not bound by the unethical commentary of the District Attorney or the promises made for political purposes. It would thus be consistent with the interests of justice and the protection of Mr. Mazzei's constitutional rights to proceed accordingly.

39. Defendant respectfully asks the Court to order such other and further relief as it may deem proper.

Dated: October 12, 2025
       Staten Island, New York

Yours, etc.

            MARK J. FONTE, ESQ.,
            Attorney for the Defendant

            Of Counsel

            Phone: (718) 420-4949
            Email: mfontelaw@yahoo.com

E. MAZZEI 5412400411
11-11 HAZEN St., RNDC
E-ELMHURST, NY 11370

Retail 

11201

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
ASTORIA, NY 11103
FEB 10, 2026

$2.44
S2324M503666-26

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   FEB 18 2026   ★

BROOKLYN OFFICE

CLERK OF US DISTRICT COURT: EDNY
225 CADMAN PLAZA EAST
BKLYN , NY 11201

LEGAL MAIL